IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATILDA FLORES CHAVEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-1103-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

## I. PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 19-30). The Appeals Council denied Plaintiff's request for

review. (TR. 3-5). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 30, 2010, the alleged onset date. (TR. 21). At step two, the ALJ determined that Ms. Chavez had the following severe impairments: diabetes mellitus, obesity, depression, and borderline intellectual functioning. (TR. 21). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21).

At step four, the ALJ found that Plaintiff could perform her past relevant work of housekeeper. (TR. 29). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [O]ccasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, sit for at least 6 hours. She is limited to simple repetitive tasks, can relate to supervisors and coworkers only superficially, and should not work with the public.

(TR. 23).

Even though the ALJ concluded that Plaintiff could perform her past relevant work, he proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 52). Given the limitations, the VE identified two jobs from the Dictionary

of Occupational Titles. (TR. 53). Thus, in an alternative step five finding, the ALJ adopted the testimony of the VE and concluded that Ms. Chavez was not disabled based on her ability to perform the identified jobs. (TR. 30).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) a failure to adequately consider her obesity in assessing the RFC and (2) an erroneous credibility analysis.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. ERROR IN THE CONSIDERATION OF OBESITY

As alleged by Ms. Chavez, the ALJ failed to adequately consider the effects of Plaintiff's obesity when assessing the RFC.

### A. ALJ's Duty to Consider Obesity

Social Security Ruling 02–1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 at *1, 3 (Sept. 12,

2002) (SSR 02-1p). At step two, obesity will be found to be a "severe" impairment when, alone, or in combination with another medically determinable impairment, it significantly limits an individual's physical or mental ability to do basic work activities. *Id.* at *4. At step three, the Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00(Q).

At step four, when assessing an individual's RFC, the ALJ "must consider any additional and cumulative effects of obesity." *Id.* For example, fatigue may affect an obese individual's ability to sustain work activity and the combined effects of obesity with other impairments might be greater than may be expected without obesity. SSR 02-1p at *6. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.*

### B.     Error in the ALJ's Consideration of Obesity

At the administrative hearing in December 2013, Plaintiff testified that she was 5' 3" tall and weighed approximately 190 pounds, which was her normal weight. (TR. 45). Plaintiff's testimony is consistent with the records submitted by various medical personnel which reflect Ms. Chavez' weight between 187 and 204 pounds during the disability period. (TR. 232, 251, 259, 290, 292, 297, 323, 328). Ms. Chavez' weight

translated to a body mass index (BMI) ranging between 33.1 and 36.1—levels which are consistent with "obesity" as defined by the SSA. SSR-02-1p at *2.

At step two, the ALJ expressly found that Plaintiff's obesity was a severe impairment. (TR. 21). As a result of this finding, the ALJ was obligated to address the functional restrictions associated with the obesity. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), (e), (g). Further, in assessing Plaintiff's RFC, the ALJ was required "to give adequate consideration to the effect of [Plaintiff's] obesity in combination with her other severe impairments." SSR 02-1p at *6.

The ALJ mentions Plaintiff's weight three times in the opinion. First, in summarizing Ms. Chavez' testimony, the ALJ stated: "The claimant is 5' 3" tall and weighs 190 pounds." (TR. 24). Next, in a summary of a report form a consultative physician, the ALJ noted "Examination revealed the claimant was 5' 3" tall with a weight of 198 pounds[.]" (TR. 24). Finally, in assessing Plaintiff's complaints concerning medication side effects, the ALJ stated: "The claimant reported that her main complaint at the consultative examination was side effects from her medications; however, the claimant was 5' 3" tall with a weight of 198 pounds." (TR. 27). The first two statements are merely recitations of reports regarding Ms. Chavez' weight and the third statement seems to discount Ms. Chavez' complaints regarding medication side effects based on her height and weight, although the Court is not convinced regarding the ALJ's explanation. In any event, these three statements represent the entirety of the ALJ's consideration of Plaintiff's obesity.

As stated, Plaintiff's BMI which ranged from 33.1 to 36.1 classified her as obese for purposes of the sequential evaluation process. SSR 02-1p at *2. Upon such

5

classification, the ALJ was required to analyze the functional loss and limitations caused by the obesity, both alone and in combination with other impairments. *See* SSR 02-1p at *6. Although the ALJ accepted Plaintiff's obesity as a severe impairment, the ALJ did not specifically identify "any functional limitations resulting from the obesity in the RFC assessment," or adequately explain why there were no such limitations, as required. *See id.* at *6-*7; TR. 23.

Nor did the ALJ address whether Plaintiff's obesity affected or exacerbated her other severe impairments of diabetes mellitus, depression, or borderline intellectual functioning, as instructed by SSR 02-1p. *See* SSR 02-1p at *3 ("Obesity may also cause or contribute to mental impairments such as depression."), *4 (requiring ALJ to "consider the possibility of coexisting or related conditions, especially as the level of obesity increases").

The Commissioner argues that the ALJ's consideration of Plaintiff's obesity was adequate because: (1) Plaintiff did not claim obesity as a disabling impairment, (2) Plaintiff formerly worked as a groundskeeper, (3) no doctor had assessed limitations based on obesity, and (4) the ALJ had given "great weight" to an opinion from a state agency physician who had considered Plaintiff's obesity. (ECF No. 26:6-8). Alternatively, Ms. Colvin argues that even if the ALJ's analysis of Plaintiff's obesity had been deficient, any error was harmless in light of the fact that the RFC restricted Plaintiff to light work, which adequately accounted for any limitations owing to obesity. None of Defendant's arguments are persuasive.

First, Plaintiff's failure to expressly allege obesity as a disabling impairment is irrelevant in light of the ALJ's determination that the obesity was a severe impairment

6

at step two. In light of the step two finding, the ALJ was required to consider the effect of the obesity throughout the remainder of the disability process. *See* SSR 02-1-p at *1; *see also Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010) (noting that "*all* medically determinable impairments, severe or not, must be taken into account at [the] later steps.") (emphasis in original); 20 C.F.R. § 404.1545(a)(2) (requiring that all medically determinable impairments be considered when assessing the RFC).

Second, Plaintiff's former employment as a groundskeeper was "medium" work, as acknowledged by the Commissioner, and would have no bearing on Plaintiff's current ability to perform "light" work, as set forth in the RFC assessment. (TR. 23).

Third, the absence of limitations assessed by physicians tied directly to Plaintiff's obesity does not excuse the ALJ's duty to make an independent assessment and explain his findings. *See* SSR 02-1p at *1, *3, *7; *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (rejecting claim that an RFC for medium work was supported by a lack of diagnostic tests showing the claimant could not occasionally lift 50 pounds, noting that "the absence of [such] evidence is not evidence.") (brackets in original). Furthermore, the ALJ is charged with considering the effects of obesity in combination with the claimant's other impairments, both severe and non-severe. *See* SSR 02-1p at *6. Thus the absence of limitations assessed by physicians and tied to obesity alone would be insufficient to excuse the ALJ's duty to consider the combined effects of obesity with other impairments.

Fourth, Ms. Colvin correctly notes that the ALJ gave "great weight" to a state agency physician's opinion which had mentioned Plaintiff's BMI. (TR. 282) But in discussing this record, the ALJ did not note the BMI reference, and the ALJ did not

7

expressly rely upon—or reject—that portion of the physician's opinions in assessing the RFC. (TR. 25, 28). In the absence of the ALJ's explicit reliance on that portion of the physician's opinion, the Court is not permitted to supply such a *post hoc* rationale. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "engage in an impermissible reweighing of the evidence" or "substitute [its] judgment for that of the Commissioner.").

Finally, the Court cannot conclude that the ALJ's failure to discuss the functional effects of obesity was harmless in light of the fact that the ALJ limited Plaintiff to light work, which, according to the Commissioner, properly accounted for any limitations from obesity. As noted by Ms. Colvin, the ALJ did limit Plaintiff to light work, stating that she could "occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, [and] sit for at least 6 hours." (TR. 23). But neither the ALJ nor this Court is permitted to assume that these restrictions reflect consideration of Plaintiff's obesity. As noted by the SSA, the ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments" because "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." SSR 02-1p at *6. Rather, the ALJ must "explain how he reached his conclusions on whether obesity caused any physical or mental limitations." *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (internal quotation marks omitted). *See Hamby v. Astrue,*

260 Fed. Appx. 108 (10th Cir. 2008); *DeWitt v. Asture,* 381 Fed. Appx., 786 (10th Cir. 2010). See also *Smith v. Colvin,* 625 Fed. Appx. 896 (10th Cir. 2015).[1]

In sum, the ALJ provided no discussion of the effect of obesity on Plaintiff's other severe impairments. The ALJ's failure to discuss the functional limitations that may be caused by Plaintiff's obesity, either alone or in combination with other impairments, is an error that undermines the RFC finding and warrants remand.

## VI. ERROR IN THE CREDIBILITY ANALYSIS

As alleged by Ms. Chavez, the ALJ's credibility determination was legally faulty and lacked substantial evidence. As a result, remand is appropriate on this allegation of error.

### A. ALJ's Duty to Evaluate Allegations of Pain/Credibility

Social Security regulations require a two-step process to evaluate a claimant's allegations of pain. First, the adjudicator must consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce the individuals' pain. Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (July 2, 1996) (SSR 96-7p). Second, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to perform basic work activities. *Id.* In doing so, the ALJ must make a finding on the claimant's credibility

---

[1] In *Smith,* cited by the Commissioner (ECF No. 26:7-8), unlike the *Baker, Hamby,* and *DeWitt* cases, all unpublished, the Court found the ALJ's discussion of claimant's obesity adequate, stating that it declined to impose a requirement on the ALJ to "note the absence of any evidence that her obesity resulted in additional functional limitations or exacerbated any other impairment." *Smith* at 899. Although *Smith* is more recent, it provides little in the way of detailed guidance, thus the undersigned finds the earlier cases persuasive.

based on a consideration of the entire case record, including the individual's own statements about the symptoms. *Id.* When evaluating the credibility of a claimant's allegations, the ALJ must consider factors including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 3.

It is not enough for the ALJ to simply recite the factors, although he need not undergo a formalistic factor-by-factor recitation of the evidence. SSR 96-7p at *4; *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). However, in considering the factors, the ALJ must "set[ ] forth the specific evidence he relie[d] on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The ALJ must give specific reasons for the credibility finding, and must be sufficiently specific regarding the weight given to the individual's statements and the reasons for that weight. SSR 96-7p at *4. It is not sufficient to make a conclusory statement that

"the individual's allegations have been considered" or that "the allegations are (or are not) credible." *Id.*

## B.  Plaintiff's Allegations of Pain and Related Limitations

At the hearing, Ms. Chavez stated that she suffered from daily pain in her back, knees, shoulders, arms, and feet which caused her difficulties in walking, bending, sitting, and kneeling. (TR. 41). Specifically, Plaintiff stated that her knees would often swell and "give up," rendering her unable to walk. (TR. 41). Ms. Chavez also stated that she suffered from swelling and numbness in her right hand and arm which limited her ability to lift anything on that side. (TR. 42). Additionally, Plaintiff stated that she suffered from diabetic neuropathy which caused numbness and swelling in her feet. (TR. 42-43). For the pain, Plaintiff stated that she took muscle relaxers and "inflammation medication" and for the neuropathy, she took Metformin. (TR. 41, 43). According to Ms. Chavez, the medications caused side effects including dizziness, light-headedness, nausea, and headaches. (TR. 45).

Ms. Chavez also testified that her physical impairments limited her ability to dress herself and prohibited her from cooking and cleaning. (TR. 44). Plaintiff also stated that because of her pain, she was only able to: (1) stand for approximately 20-25 minutes at a time, (2) walk for approximately 10 minutes or one-half block, (3) sit in one position comfortably for approximately 10-15 minutes, and (4) lift a small purse. (TR. 47-49).

## C.  Error in the ALJ's Credibility Determination

In evaluating Plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these

> symptoms are not entirely credible for the reasons explained in this decision.

(TR. 24). The ALJ then summarized the medical evidence, including findings from a consultative physical examination, a consultative psychological examination, opinions from state agency consultants, and Plaintiff's treating physician, Dr. Reinschmiedt. (TR. 24, 27). The ALJ also discussed Plaintiff's activities of daily living, which the ALJ described as:

> not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record, . . . the claimant has reported that she has no problem with personal care, and she cooks, drives and goes shopping.

(TR. 25). The ALJ then cited a lack of medical records to substantiate Plaintiff's allegations that she suffered from pain and side effects from her medications to an extent which would prevent work. The ALJ stated:

> With regard to medication side effects, although the claimant has alleged various side effects from the use of the medications, the medical records, such as office treatment notes, do not corroborate these allegations.
>
> . . .
>
> The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities, which would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis. X-ray of the right wrist revealed no fractures or dislocations. Cervical spine x-rays revealed no evidence of traumatic injury, but there was degenerative discogenic disease from C4-5 through the C6-7 levels.

(TR. 27) (internal citation omitted). In conclusion, the ALJ discounted Plaintiff's credibility, citing: (1) "inconsistencies regarding the claimant's physical limitations and the objective medical evidence," including a lack of x-ray findings and medical records to support Plaintiff's allegations of pain and medication side effects and (2) her previous

work as a housekeeper and groundskeeper. (TR. 27). The ALJ also references Ms. Chavez' complaints regarding her side effects from medication, but the Court cannot discern whether the ALJ had accepted or discounted the allegations. *See infra*. Ms. Chavez challenges the ALJ's reference to her daily activities as "taken out of context" and argues that the ALJ's remaining rationales are legally insufficient and lack substantial evidence. Ms. Chavez is correct.

First, Plaintiff challenges the ALJ's statement that "the claimant has reported that she has no problem with personal care, and she cooks, drives and goes shopping." (TR. 25). As noted by Plaintiff, the ALJ's statement is not entirely accurate, as it omits details related to Plaintiff's abilities in these areas. For example, in two function reports, Ms. Chavez stated that: (1) she needed to be reminded to bathe and had trouble getting in and out of the bathtub, (2) her children helped her prepare meals and her "cooking" was limited to microwaving food, (3) she had to use a wheelchair while shopping, and (4) she never drove by herself, and when she did drive, it was only a short distance to the "quick shop." (TR. 152, 153, 156, 172-174).

In *Sitsler v. Astrue*, 410 Fed. Appx. 112 (10th Cir. Jan. 10, 2011) (unpublished op.), the Tenth Circuit Court of Appeals held that this this type of selective and misleading review of Plaintiff's daily activities is impermissible. In *Sitsler*, the claimant argued that the ALJ mischaracterized the extent of his daily activities, ignoring particular qualifications and limitations. *Sitsler*, 410 Fed. Appx. at 117. In discounting the plaintiff's credibility, the ALJ relied on the plaintiff's activities of daily living, stating that he could care for his personal needs, care for his small children, perform household chores, drive, and go shopping. *Id.* at 114. In contrast, however, the record actually

13

reflected that the claimant had to have help in caring for his children, he only made simple meals, his ability to perform household chores was limited to a few minutes, his shopping was limited, and he drove very little. *Id.* at 117. Noting that the ALJ's analysis was "selective and misleading," the Court stated that "an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations." *Id.*; *see Talbot v. Heckler,* 814 F.2d 1456, 1462, 1464 (10th Cir. 1987) (noting that the ALJ improperly based his conclusion that claimant could do light work on a mischaracterization of his activities).

As in *Sitsler,* the ALJ here mischaracterized the extent of Ms. Chavez' daily activities, ignoring the numerous qualifications and limitations she consistently reported. Thus, the Court concludes that the ALJ's evaluation of plaintiff's credibility was flawed by his selective review of the evidence.

Second, the ALJ cites "inconsistencies regarding the claimant's physical limitations and the objective medical evidence," including a lack of x-ray findings and medical records to support Plaintiff's allegations of pain and medication side effects. The Tenth Circuit has stated that "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987).

Under this rubric, the ALJ was entitled to rely on the lack of x-ray findings to substantiate the Plaintiff's allegations of pain to the degree she alleged. *See* TR. 27 (ALJ's finding that the inconsistencies in Plaintiff's functional limitations and allegations

"yield[ed] [ ] a partial allegation credibility assumption.") However, the record only contained x-rays of Ms. Chavez' right wrist and back. TR. 314-15. Thus, while the ALJ was entitled to cite those findings in connection with Ms. Chavez' allegations of wrist and back pain, the x-rays would not account for Ms. Chavez' complaints of severe pain in her knees, arms, shoulders, and feet. (TR. 41). The ALJ failed to discuss those allegations, and in any event he could not have relied on an absence of x-rays to support a dismissal of such pain. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004) (noting that "the absence of [such] evidence is not evidence.") (brackets in original).

Finally, the ALJ referenced Plaintiff's prior employment and her allegations concerning side effects from her medications. The ALJ stated:

> The claimant alleges that she is unable to work because she has osteoarthritis in the knees. Her past work was that of a groundskeeper prior to filing disability. Her other job was that of a housekeeper.
>
> The claimant reported that her main complaint at the consultative examination was side effects from her medications; however the claimant [sic] 5' 3" tall with a weight of 198 pounds. The assessment was chronic knee pain, chronic right wrist pain, diabetes mellitus, hypertension and hyperlipidemia.

(TR. 27). Although the ALJ cited Ms. Chavez' prior work, he has not affirmatively relied on the work as a basis to discount her allegations that she now suffers from disabling pain. And although the ALJ cited to Plaintiff's reports of medication side effects, his subsequent references to Ms. Chavez' weight and findings from the consultative examiner do not clearly link to her allegations of side effects. In both circumstances, the Court will not speculate regarding the ALJ's intentions and will therefore refrain from deciding one way or the other, whether the explanations are sufficient. *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.")

## VII. SUMMARY

In assessing Plaintiff's RFC, the ALJ erred in failing to consider the functional effects of Plaintiff's obesity, both singly, and in combination with Plaintiff's other impairments. Additionally, the ALJ erred in assessing Plaintiff's credibility by mischaracterizing her daily activities and otherwise failing to provide substantial evidence for his findings. These errors warrant remand for further consideration of: (1) the functional effects of Plaintiff's obesity at all steps of the disability determination process and (2) Plaintiff's allegations of pain and related limitations.

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative development.

ENTERED on August 15, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE